UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUSCO TUG & BARGE, INC. et al., | |
| Plaintiffs, | C11-1658 TSZ |
| v. | ORDER |
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY, | |
| Defendant. | |

THIS MATTER comes before the Court on Plaintiffs Brusco Tug & Barge, Inc. and SeaBright Insurance Company's (collectively "Plaintiffs") Motion for Partial Summary Judgment, docket no. 25, and Defendant St. Paul Fire and Marine Insurance Company's ("Defendant") Motion for Summary Judgment of Dismissal, docket no. 30. Having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] the Court enters the following Order.

---

[1] The Court finds that this matter can be decided without oral argument.

ORDER - 1

A. **Background**

This is a maritime insurance dispute that originates from a seaman's on-the-job injury aboard a barge in the Sacramento River. The parties do not dispute the underlying facts or the course of events that led to this action.

1. **Underlying Injury**

Mr. Kenneth Kellogg, a Jones Act seaman employee of Brusco Tug & Barge, Inc. ("Brusco"), was injured in the course of his duties. Specifically, Mr. Kellogg was injured while attempting to unmoor a barge owned by The Dutra Group ("Dutra"). Declaration of Lanning Trueb (Trueb Decl.), docket no. 29, Ex. D at ¶¶ 2.4, 3.4–3.11. Mr. Kellogg's complaint alleged Jones Act negligence against Brusco and unseaworthiness and negligence under General Maritime Law against Dutra because the barge's improper mooring rendered it an unseaworthy vessel, which caused his injury. *Id.* at 3–4 (alleging three causes of action titled "Count I-Jones Act," "Count II-General Maritime Law Unseaworthiness," and "Count III-General Maritime Law Negligence").

Dutra and Brusco operated under a Standing Towage Agreement ("Towage Agreement"). Declaration of Dan Neal (Neal Decl.), docket no. 26, at ¶¶ 2–5 & Ex. A. The Towage Agreement required both Brusco and Dutra to acquire Property & Indemnity (P&I) Insurance in the amount of $5,000,000 and list the other as an additional insured. *See id.* at 4–6. The Towage Agreement also contained a reciprocal indemnity provision that indemnified the other party for employee injuries:

> Notwithstanding the foregoing provisions as to insurance, liability and indemnity, the parties agree that with respect to their employees, or the employees of their subcontractors, each shall assume liability for, indemnify and hold harmless

ORDER - 2

    (including legal costs and fees) from, and procure contractual liability or other insurance with respect to, any loss, damage, claim, liability and/or suit arising out of or relating to bodily injury to their employees or the employees of their subcontractors.

*Id.* at 6.  At the time of Mr. Kellogg's injury, Brusco had a P&I insurance policy with SeaBright Insurance Company ("SeaBright") and a Marine General Liability ("MGL") policy with Defendant.  Trueb Decl., docket no. 29, Exs. A & C.  Dutra had a P&I insurance policy with Fireman's Fund.  Trueb Decl., Ex. B.

    After Mr. Kellogg filed his action, Brusco tendered the claim to SeaBright, its P&I insurance carrier.  Dutra, in compliance with the Towage Agreement's indemnity provisions, tendered Mr. Kellogg's complaint against Dutra to Brusco.  Trueb Decl., Ex. E.  Brusco then tendered defense of Mr. Kellogg's lawsuit to Defendant, seeking coverage under the MGL policy for its indemnity obligations to Dutra.  Defendant denied the tender.  Trueb Decl., Ex. F; Declaration of Daniel Matthews (Matthews Decl.), docket no. 31, Ex. 4.  In its denial letter, Defendant acknowledged that the Towage Agreement was an "insured contract" as defined in the MGL policy.  *Id.*  Defendant denied coverage pursuant to Fifth Circuit case law governing the interplay of additional assured requirements and "knock-for-knock" indemnity agreements—the coverage of $5,000,000 provided to Brusco as an additional assured under Dutra's P&I policy must be exhausted before the MGL policy is triggered.  *Id.*

    Following Defendant's denial, Brusco tendered defense to Fireman's Fund, Dutra's P&I carrier.  Trueb Decl., Ex. G.  While Fireman's Fund acknowledged that Brusco qualified as an additional assured, it denied the tender because Brusco's liability

ORDER - 3

to Mr. Kellogg was not "as owner" of a vessel owned by Dutra.  *Id.*  Because Brusco did not fulfill the owner status requirement of the policy, Brusco was not covered.

Mr. Kellogg eventually settled his claims for $290,000, Declaration of Paul Smith (Smith Decl.), docket no. 43, Ex. D, and SeaBright expended a total of $600,000. Declaration of Steve Wiper, docket no. 28, at ¶ 3.  The settlement did not allocate fault between Brusco and Dutra and did not divide the settlement amount.  *Id.*  SeaBright funded the entire settlement.  *Id.*  Brusco continued to pursue coverage from Defendant without success.  *See* Matthews Decl., docket no. 31, Ex. 5.  Defendant reiterated its initial position on exhaustion of Dutra's P&I policy regardless of Fireman Fund's rejection, noting that the "Failure of Insurance" clause required Dutra to step into the insurer's shoes; Defendant also identified an additional ground for denial under the policy's specific exclusions and denied any responsibility for equitable contribution. Smith Decl., docket no. 43, Ex. E.  Plaintiffs then filed this action.

## 2. Competing Motions for Summary Judgment

Plaintiffs move for partial summary judgment on a single legal issue—a declaratory judgment that Defendant was obligated to defend and pay part of the injury claims of Mr. Kellogg.  Plaintiffs argue that by virtue of the Towage Agreement between Brusco and Dutra and the MGL policy with Defendant, Defendant was responsible for the portion of Mr. Kellog's claims attributable to Dutra's negligence.  Defendant opposes the Plaintiffs' motion.

In addition to filing an opposition, Defendant filed a motion for summary judgment of dismissal, docket no. 30, that mirrors its arguments opposing Plaintiffs'

ORDER - 4

motion, docket no. 25.  Defendant "incorporates its motion for summary judgment and supporting declarations by reference as if fully set forth herein in opposition to plaintiffs' motion."  Def. Opp'n, docket no. 34, at 2:15-16.  Similarly, Plaintiffs' Reply references and lifts language directly from its own opposition of Defendant's motion.  Pla. Reply, docket no. 39, at 2 n.2, 4:18–21, 5:5–9, 5:10–11, 5:15–18, 9:22–23, and 10 n.5.

Because the competing motions are consistent and in some cases identical, it would not be possible to grant or deny one motion without at least partially granting or denying the other.  As a result, the Court will consider both motions simultaneously.

**B. <u>Standard for Summary Judgment</u>**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A fact is material if it might affect the outcome of the suit under the governing law.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorable drawn.  <u>Id.</u> at 255, 257.  When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  <u>See Miller v. Glenn Miller Prod., Inc.</u>, 454 F.3d 975, 988 (9th Cir. 2006); <u>see also Beard v Banks</u>, 548 U.S. 521, 529 (2006) ("Rule 56(c) 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to

ORDER - 5

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting <u>Celotex</u>, 477 U.S. at 322)).

### C. Applicable Law

A contract that relates to a ship, to commerce or navigation on navigable waters, or to maritime employment is a maritime contract. <u>Sundance Cruises Corp. v. American Bureau of Shipping</u>, 7 F.3d 1077, 1080 (2d Cir. 1993). Further, maritime law governs indemnity provisions in a maritime contract in absence of a choice of law clause. <u>Stoot v. Fluor Drilling Servs.</u>, 851 F.2d 1514, 1517 (5th Cir. 1988). Both the Towage Agreement and the MGL policy relate to ships, to navigation on navigable waters, or maritime employment. As a result, both qualify as maritime contracts.

Generally, a court's "interpretation of a contract is a mixed question of law and fact." <u>Miller v. Safeco Title Ins. Co.</u>, 758 F.2d 364, 367 (9th Cir. 1985). "When the district court's decision is based on analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law." <u>Id</u>; <u>see also</u> <u>Breaux v. Halliburton Energy Serv.</u>, 562 F.3d 358, 364 (5th Cir. 2009) ("Where 'the written instrument is so worded that it can be given a certain definite legal meaning or interpretation, then it is not ambiguous, and this Court will construe the contract as a matter of law.'") (quoting <u>Foreman v. Exxon Corp.</u>, 770 F.2d 490, 496 (5th Cir. 1985)).

Neither party disputes the applicable law.

### D. Towage Agreement and Insurance Contract

As an initial matter, there is no dispute that the Towage Agreement represents an "insured contract" under the MGL Policy.  Nor do the parties disagree on the terms of the Towage Agreement and relevant insurance policies, the facts surrounding Mr. Kellogg's injury, or the events that followed Mr. Kellogg's complaint.  The sole disagreement relates to the meaning of those terms in the Towage Agreement as they relate to Defendant's responsibility to defend and pay Brusco's contractual indemnity of Dutra for Mr. Kellogg's injuries.

Defendant presents three cascading arguments to deny it had an obligation to defend and pay part of Mr. Kellogg's claims: (1) Dutra's P&I policy must be exhausted before the Defendant's MGL policy must pay because the Towage Agreement's additional assured requirements trump the "knock-for-knock" indemnity clause; (2) even if the Dutra P&I policy is not primary, the liability for Mr. Kellogg's injuries falls within a specific policy exclusion in the MGL policy for claims arising under General Maritime Law and the Jones Act; and (3) the claims for equitable contribution are barred because SeaBright's policy and the MGL policy do not provide coverage for a common insured liability or the same claim.

#### 1. Exhaustion Argument

Defendant's longest-standing denial of tender and coverage revolves around the interplay between the additional assured requirements and the indemnity agreement in the Towage Agreement, which is a matter of contract interpretation.

a. Defendant's Position

Defendant argues that based on "well-established case law governing" this interplay, Dutra's P&I coverage must be exhausted before Defendant's policy "could be triggered."  Def's. Mot. for Summ. J., docket no. 30, at 6–7.  Defendant's argument can be summarized as follows.  The Towage Agreement required Dutra to provide P&I coverage in the amount of $5,000,000 or, failing that, required Dutra to self-insure.  Because Mr. Kellogg's case settled for less than this amount, "Brusco's potential indemnity obligation can never be triggered [and] Brusco can thus not have an MGL insured contract claim for coverage of a non-existing indemnity obligation."  Id. at 11:6–9.  Nor does the fact that Dutra's P&I carrier refused tender change the analysis.  After Fireman Fund's refusal, Dutra was required to self-insure under the Towage Agreement.  Under its argument, Defendant's role was to be "an excess carrier."  Id. at 12:20.

Defendant primarily supports its argument with a trio of cases from the Fifth Circuit—<u>Tullier v. Halliburton Geophysical Servs., Inc.</u>, 81 F.3d 552 (5th Cir. 1996); <u>Klepac v. Champlin Petroleum Co.</u>, 842 F.2d 746 (5th Cir. 1988); <u>Ogea v. Loffland</u>, 622 F.2d 186 (5th Cir. 1980)—interpreting maritime contracts that rendered "knock-for-knock" indemnification as subordinate to P&I coverage of additional assureds.  In each case, the court held that—interpreting the contract as a whole—the additional assured provision took precedence over the indemnification.  <u>Tullier</u>, 81 F.3d at 554; <u>Klepac</u>, 842 F.2d at 748; <u>Ogea</u>, 622 F.2d at 189–90.  Defendant crowns this argument with a discussion of a law review article examining this maritime insurance principle.  The law review article concludes that "[w]hile unqualifiedly naming the indemnitee as an

ORDER - 8

additional assured on a P&I policy is common, few recognize that the consequence of doing so is the emasculation of reciprocal knock-for-knock indemnity obligations." William E. O'Neil, *Insuring Contractual Indemnity Agreements Under CGL, MGL, and P&I Policies*, 21 Tul. Mar. L.J. 359, 376 (1997).  Thus, Defendant, relying on the article's interpretation of the case law, concludes that the Towing Agreement between Brusco and Dutra, which contains the additional assured and indemnification clauses, "essentially converts the contractual indemnity obligation to the equivalent of excess insurance." *Id.*

### b. Plaintiffs' Position

Plaintiffs, on the other hand, dispute the existence of any general rule requiring exhaustion of a P&I policy in any Circuit.  Defendant, according to Plaintiffs, reads the results of the Fifth Circuit jurisprudence too broadly.[2]  Plaintiffs contend that these cases do not expound a general rule of maritime law, but rather interpret three contracts in a similar manner because each contract contained similar language addressing additional assured requirements and indemnification.

In support, Plaintiffs distinguish the Fifth Circuit cases from this Towage Agreement and accompanying insurance requirements in two significant ways[3]: (1)

---

[2] Indeed, according to Defendant, "[t]he primary holding of *Tullier* is that unilateral insurance requirement provisions precede any indemnity requirements." Def's. Mot. for Summ. J., docket no. 30, at 18:5-6.

[3] Plaintiffs identify two additional points of distinction from the Fifth Circuit cases including *Tullier*. *See* Def's. Reply, docket no. 40, at 5:1–3 (summarizing plaintiffs' attempt to distinguish *Tullier* as including four differences, including "a requirement to obtain contractual liability insurance" and specific exclusion of contractual liability in Dutra's P&I policy).  These additional points are less persuasive.  First, as the court in *Tollier* notes, the primacy of P&I insurance exists even where "both parties have insured their

ORDER - 9

Dutra's P&I insurance required the assured and additional assured to be acting "as owner" to be covered, and (2) the Towage Agreement contained language in the first sentence of Section 10.d to qualify the insurance procurement clauses that precede it. These differences distinguish the cases relied on by Defendant and represent a departure from the problem identified by Professor O'Neil.

First, Plaintiffs argue that the "as owner" language, combined with the specific exclusion of contractually assumed liabilities, demonstrates the parties' intents to avoid the emasculation of the indemnity clauses. As Plaintiffs note at length, the parties in *Tullier* specifically contracted to remove the "as owner" language under the policy so it would not be a status-based policy. 81 F.3d at 553–54. Here, the parties included this language in the insurance procurement provisions to relay their intent that the P&I policy would not be primary.

Second, and even more importantly, according to Plaintiffs, Section 10.d provides that the indemnification provision controls over the other indemnity and insurance procurement provisions listed elsewhere in the Agreement. The "notwithstanding" language constitutes a qualification because it "clearly signals the drafters' intention that the provisions of the 'notwithstanding' section overrides confliction provisions of any other section." *Cisneros v. Alpine Ridge Group*, 508 U.S. 10, 17-18 (1993). With this

---

indemnity obligations." 81 F.3d at 554. And second, the fact that Dutra's P&I insurance specifically excluded contractually assumed liabilities is weakened by the Towage Agreements self-insurance requirement.

ORDER - 10

qualification and the "as owner" language, Defendant's exhaustion argument fails because the established case law suggests a different result.

Applying the reasoning of the Fifth Circuit cases and the rules of contract interpretation to this case, the Court concludes that the additional assured requirement does not trump the indemnity clause.

### c. Dutra's P&I Policy is Not Primary

In many ways, Defendant's argument is a victim of its own success. The three cases—*Tullier*, *Ogea*, and, *Klepac*—are so similar in contract language that the differences Brusco highlights stand out all the more clearly. None of those cases had the "notwithstanding" language and all removed the "as owner" qualification from the P&I policy. Moreover, the law review article on which Defendant relies clearly notes that "*unqualifiedly* naming the indemnitee as an additional assured" produces "a result inconsistent with the intent of the reciprocal indemnity agreements." O'Neil, *supra*, at 379 (emphasis added). "Notwithstanding" is a qualification and Defendant's off-handed dismissal that it "does not change the result" is unconvincing without explanation.

While the parties' intentions do not override proper interpretation of a contract, the reduction of those intentions into writing that the parties insert in the contract must be considered when the Court interprets the contract. Under general maritime law, "insurance procurement and indemnity provisions of a . . . contract 'must be read in conjunction with each other in order to properly interpret the meaning of the contract.'" *Tullier*, 81 F.3d at 553–54 (quoting *Ogea*, 622 F.3d at 190). Defendant's interpretation ignores this rule, even as it relies on it. Similarly, as Defendant identified, it is black

ORDER - 11

letter law that a contract must be read to give meaning to each clause, <u>Nishikawa v. U.S. Eagle High, LLC</u>, 138 Wn. App. 841, 848 (2007), but that rule runs both ways. Defendant cannot interpret the contract to render the "notwithstanding" language meaningless. Nor does Defendant provide an alternative explanation for the purpose of the language.

Ultimately, the Towage Agreement language contains qualifying language that distinguishes this case from the Fifth Circuit precedents. The Towage Agreement specifically avoided the "default" rule by including language that indicated the parties' intent to avoid the "emasculation" problem explained by Professor O'Neil and relied on by Defendant. Defendant's reliance on the well-established case law is therefore misplaced. The Court rejects Defendant's argument that maritime law requires exhaustion of Dutra's P&I policy regardless of the language of the contract.

In reading the contract as a whole and giving meaning to each clause, the Court concludes that the additional assured requirement in the Dutra P&I policy and the self-insurance requirement are not the primary insurance under the Towage Agreement for Dutra's liability to Mr. Kellogg. The Court cannot support a conclusion that gives meaning to some clauses while ignoring others. Defendant's rejection of tender on this basis is flawed. Defendant had an obligation to defend and pay Mr. Kellogg's claims attributable to Dutra's negligence for which Brusco indemnified.

    2.    **<u>MGL Exclusions</u>**

Second, Defendant argues that its policy excludes the claims because they arise under General Maritime Law and the Jones Act. The MGL policy contained the

following language that excluded certain types of liability from coverage:

> (16) Workers Compensation and Similar Laws
>
> Any obligation for which the insured or any carrier as his insurer may be held liable under Workers Compensation, Unemployment Compensation, Disability Benefits, the Longshoreman and Harbor Workers Compensation Act, the Death on the High Seas Act, the Jones Act, or under any similar law or act.  This exclusion shall also apply to any liabilities, duties or obligations of the insured owed to a crewmember or seaman under General Maritime Law.

Trueb Decl., docket no. 29, Ex. C, at 32.  While Defendant did not originally identify this as a reason for denying coverage, it did so in subsequent communication.

Pursuant to this exclusion, Defendant denied coverage because its policy does not cover Brusco's obligation to an injured Brusco crewmember.  Thus, Mr. Kellogg's damages for maintenance, cure, and unearned wages are excluded because they arise from the Jones Act and General Maritime Law.  Plaintiffs do not dispute that Defendant is not liable for the portion of Mr. Kellogg's damages that resulted from Brusco's direct liability under General Maritime Law.  Plaintiffs argue, however, that this exclusion does not extend to Brusco's potential indemnity obligation to Dutra.

Plaintiffs argue that the potential indemnity obligation is a contract liability that does not arise under General Maritime Law as such.  Defendant, on the other hand, interprets the exclusion broadly; because the indemnity obligation is a "liability duty, or obligation" from a maritime contract, which is governed by maritime law, Brusco's indemnity arises under maritime law.  Defendant's interpretation of the clause is flawed for two reasons.

ORDER - 13

First, Plaintiffs do not seek coverage for an "obligation of the insured owed to a crewmember or seaman." By its own terms, the exclusion applies only to "the insured," Brusco. Thus, it does not apply to Dutra, the party that arguably has an obligation to Mr. Kellogg, the crewmember or seaman. Additionally, Plaintiffs' claim arises from Brusco's liability to Dutra, which is neither a "crewmember or a seaman," but an entity. When Brusco assumed responsibility for Dutra's liability via the Towage Agreement indemnification, Defendant afforded Brusco coverage for Brusco's liability under the Towage Agreement, including Dutra's liability for causing injuries to a Brusco employee.

Second, a reasonable interpretation of this exclusion with other contract language does not support Defendant's position.[4] Courts do not interpret policy provisions in isolation; courts interpret the policies in a manner that gives effect to each policy provision. *Tran v. State Farm Fire & Cas. Co.*, 136 Wn.2d 214, 232 n.8 (1998).[5] Plaintiffs seek coverage of a contractual liability, which is governed by another section of the policy. Under the exclusion entitled "Contractual Liability," the policy did not cover contractual liability "assumed by the insured under any contract or agreement." Trueb Decl., docket no. 29, Ex. C at 28–29. But this exclusion "does not apply to liability for

---

[4] At best, the language is ambiguous. Even in that case, ambiguous language would be construed against Defendant, the drafter, and the exclusion would not apply. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 733 (1992) ("If exclusionary language is ambiguous, it is proper to construe the effect of such language against the drafter . . . . if an insurance policy's exclusionary language is ambiguous, the legal effect of such ambiguity is to find the exclusionary language ineffective.").

[5] State law is informative in this context because "[d]isputes arising under marine insurance contracts are governed by state law . . . unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice. *Yu v. Albany*, 281 F.3d 803, 806 (9th Cir. 2002) (citing *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir. 1998)).

ORDER - 14

'bodily injury' or 'property damage'" that Brusco "[a]ssumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury or 'property damage' occurs subsequent to the execution of the contract or agreement." _Id._  It is undisputed that the Towage Agreement is an insured contract.[6]  The policy also broadly defines a "bodily injury," as "any physical harm, including sickness or disease to the physical health of a person, which captures Mr. Kellogg's injuries. _Id._ at 21.  Giving meaning to each policy provision, this exclusion deals with Brusco's (the insured) assumption of obligations of Dutra through Towage Agreement and the exclusion relied on by Defendant is inapplicable.

    3.  Equitable Contribution

  Finally, Defendant argues that Plaintiffs' claims for equitable contribution are barred because SeaBright's P&I policy and Defendant's MGL policy do not provide coverage for a common insured liability required for contribution.  _Mut. of Enumclaw Ins. Co. v. USF Ins. Co._, 164 Wn.2d 411, 419 (2008).  According to Defendant, contribution only exists when both insurers are independently obligated to indemnify or defend the same insured and the same loss.  Defendant argues that because the policies provided by SeaBright and Defendant did not provide coverage for the same loss—SeaBright covered claims under the Jones Act and General Maritime Law and Defendant provided liability coverage—there is no contribution.  Furthermore, to the extent that SeaBright (on behalf

---

[6] As noted in the introduction to Part D, _supra_ at page 6.

ORDER - 15

of Brusco) funded a settlement in excess of Brusco's direct liability for Mr. Kellogg's injuries, it was a "voluntary payor" and is not entitled to equitable relief.[7]

Plaintiffs respond that SeaBright was not a voluntary payor but was jointly and severally liable for all of Mr. Kellogg's damages under maritime law. Plaintiffs' contribution claims arise from contractual liability—Brusco's indemnification of Dutra for Dutra's fault in causing bodily injury to one of Brusco's employees, Mr. Kellogg. Mr. Kellogg, in his complaint, alleged that Brusco and Dutra were concurrent tortfeasors, both responsible for the injuries he sustained when Brusco and Dutra breached the obligations each entity owed. The fact that the common obligations occur through differing insuring means—SeaBright's P&I policy and Defendant's MGL policy—is not determinative. Again, Plaintiffs' argument is correct.

Defendant's potential contribution obligation arises against Defendant through its obligation to insure Brusco's responsibility for Dutra's fault—alleged by Mr. Kellogg in his complaint. Maritime law recognizes a claim for contribution against a joint tortfeasor. _McDermott, Inc. v. AmClyde and River Don Castings, Ltd._, 511 U.S. 202 (1994). Likewise, the settlement of a maritime claim gives rise to a claim for contribution. _Sea-Land Serv., Inc. v. American Logging Tool Corp._, 637 F. Supp. 240,

---

[7] Defendant also argues that the lack of apportionment or liability between Dutra and Brusco is fatal to Plaintiffs' action because Plaintiffs could have proceeded, but chose not to proceed, to trial to determine the allocation of fault. Had Plaintiffs done so, according to Defendant, it is possible that Brusco would have been found solely liable for Mr. Kellogg's injuries. However, Defendant's argument is unpersuasive. Plaintiffs limited their motion to Defendant's obligation to pay and defend Mr. Kellogg's lawsuit when Brusco tendered the matter. Because Plaintiffs do not move for summary judgment on the fault or damages issues, Defendant's argument is premature. Defendant may be able to revive this argument following further discovery that demonstrates Dutra's lack of negligence in causing the injury.

ORDER - 16

240–41 (W.D. Wash. 1985).  The contribution claim arises where the settling joint tortfeasor (Brusco) pays more in settling the injured's claims than its proportional fault.  *McDermott*, 511 U.S. at 210–15.  The contribution through the indemnification provision could include maintenance and cure because Dutra would have been liable for maintenance and cure, proportional to its fault, absent Brusco's indemnification.  Thus, Plaintiffs have a claim for contribution.

Similarly, Defendant's argument that SeaBright was a voluntary payor fails.  Under joint and several liability, SeaBright was obligated to pay all of Mr. Kellogg's damages, even though Brusco was not entirely responsible for the injury.  Because of this liability, Defendant's invocation of *Mutual of Enumclaw* is unavailing and Brusco may seek an equitable contribution.  *Joia v. Jo-Ja Serv. Corp.*, 817 F.2d 908, 907 ("Under joint and several liability, the plaintiff is entitled to collect only the amount of the judgment, although he may recover any part or all of the judgment from one or more of the tortfeasors.").

Defendant presents three flawed arguments in opposition to Plaintiffs' motion for partial summary judgment and uses the same arguments in support of its own motion for summary judgment.  Reading the Towage Agreement and MGL policy as a whole, Defendant's interpretations are not reasonable.

### E.  Conclusion

For the foregoing reasons, the Plaintiffs' motion, docket no. 25, for partial summary judgment is GRANTED.  Under the Towage Agreement and insurance policies, Defendant was obligated under the MGL policy to defend and pay the portion of Mr.

1  Kellogg's claims attributable to Dutra's negligence.  Defendant's motion, docket no. 30,

2  for summary judgment of dismissal is DENIED.

3      IT IS SO ORDERED.

4      The Clerk is directed to send a copy of this Order to all counsel of record.

5      Dated this 26th day of September, 2012.

*(signature)*

THOMAS S. ZILLY
United States District Judge

ORDER - 18